Damon Lamont BANKS, Respondent,

v.

Russell Lowell GRANT, et al., Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, intervenor, petitioner, Appellant.

No. C7–94–2225.

Supreme Court of Minnesota.

June 6, 1996.

Timothy J. Eiden, St. Paul, for appellant.

Mark David Streed, Meshbesher, Singer & Spence, Minneapolis, Patrick H. Elliott, St. Paul, for respondents.

## OPINION

TOMLJANOVICH, Justice.

We granted the petition for further review of American Family Mutual Insurance Company (American Family), intervenor, the servicing carrier under the Minnesota Automobile Assigned Claims Plan to whom Damon Banks' claim for basic economic loss benefits was assigned. At issue is whether the servicing carrier is entitled to subrogation against a tortfeasor for basic economic loss benefits paid or payable to the claimant and whether any basic economic loss benefits paid or payable under the plan must be deducted from the verdict as a collateral source setoff. The court of appeals concluded that Minn.Stat. § 65B.64, subd. 2 (1994) provides no subrogation rights for claims based upon the negligent maintenance, use or operation of a motor vehicle and reversed the trial court's order and remanded for the collateral source offset. *Banks v. Grant*, 530 N.W.2d 864 (Minn.App.1995). We affirm and remand to the trial court for the collateral source setoff.

The plaintiff Damon Banks, a passenger in an uninsured motor vehicle, was injured on December 1, 1990, when the automobile in which he was riding was struck by an automobile owned by defendant Russell Grant, operated by defendant Prince Martin and insured by Aetna Insurance Company. Because Banks was not eligible for basic economic loss benefits under any policy of insurance, Minn.Stat. § 65B.64, subd. 1, he applied to the Assigned Claims Plan for no-fault benefits. His claim was assigned to American Family for servicing.

The record does not indicate that Banks took any action to recover against the owner or operator of the vehicle in which he was riding. In Banks' personal injury action against defendants Russell and George Grant and Martin, a jury returned a verdict in favor of the plaintiff, awarding $217,481.25 as damages—$50,481.75 in past medical expenses, $10,000 for past pain and suffering, $11,000 for lost earnings, $14,000 for future medical expenses, $114,000 for future pain and suffering and $18,000 in future loss of earning capacity. After the verdict, defendants filed a motion for a collateral source setoff in the amount of $20,000 for past medical expenses and $8,113 in past wage loss, the economic loss benefits paid or payable by American Family pursuant to Minn.Stat. § 548.36 (1994).

American Family intervened to oppose the motion asserting that by virtue of Minn.Stat. § 65B.64, subd. 2 (1994), it is subrogated to the plaintiff's claim against the Grants and that, as it had not yet made payment, the Grants should pay the amount directly to Banks. Upon this basis, the trial court denied the Grants' motion, construing section 65B.64, subd. 2, to provide a reparation obligor with a subrogation interest in the plaintiff's rights here against the insured tortfeasor for the amount of economic loss benefits American Family was obligated to pay Banks. This interpretation misapprehends the legislative plan for the coordination of benefits and we decline to engage in this expansive reading of the statute.

Minn.Stat. § 65B.64, subd. 2 (1990) provides as follows:

> If a claim qualifies for assignment under subdivision 1, the assigned claims bureau or any reparation obligor to whom the claim is assigned shall have the right to seek *indemnification* from an *uninsured tortfeasor*. Except as otherwise provided in section 340A.801, subdivision 4, the reparation obligor to whom the claim is assigned shall further be *subrogated to all of the rights of the claimant* against any person for economic loss benefits provided by the obligor to whom the claim was assigned. (Emphasis added.)

It clearly provides to the servicing carrier the right to seek indemnification from an uninsured tortfeasor.[1] In this case, the uninsured tortfeasor is the owner/operator of the vehicle in which Banks was riding and is not a party to Banks' claim. Because the defendants are not uninsured, there is no statutory right of indemnity from them. The statute then provides, in language that for purposes of this action is virtually unchanged from earlier versions, that the servicing carrier is subrogated "to all of the rights of the claimant against any person for economic loss benefits * * *."

To determine what rights to those benefits Banks might have against others, we necessarily refer to Minn.Stat. § 65B.51, subd. 2. In this context, that subdivision authorizes Banks to maintain a negligence action for economic loss benefits only against the owner/operator of the uninsured vehicle in which he was riding and only if there are no economic loss benefits available to him under another insurance policy or under the assigned claims plan. It does not authorize an action to recover those benefits against an *insured* tortfeasor, in this case, the Grants. Accordingly, because the servicing carrier is only subrogated to those rights of the claimant, it is not entitled to assert a subrogation claim.

Affirmed and remanded to the trial court for the collateral source setoff in the amount of $28,113, the amount of economic loss benefits paid or payable under the assigned claims plan.

---

1. In *American Family Mut. Ins. Co. v. Vanman,* 453 N.W.2d 48 (Minn.1990), we identified a "gap" in the comprehensive plan which coordinates the ultimate responsibility for the payment of basic economic loss benefits—that is, the plan fails to include a right to seek indemnification from an uninsured tortfeasor whose negligent operation, maintenance or use of a motor vehicle is the proximate cause of the injury for which basic economic loss benefits are paid or payable by the servicing carrier under the assigned claims plan. The legislature responded by filling in that gap in its 1989 amendment to Minn.Stat. § 65B.64, subd. 2. *See* Act of Apr. 26, 1989, ch. 58, § 2, 1989 Minn. Laws 125, 125.